J-S53001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.S.A., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.D.E., MOTHER | : : : : : : | |
| | : | No. 931 EDA 2018 |

Appeal from the Decree February 28, 2018
in the Court of Common Pleas of Philadelphia County
Family Court at No.:  CP-51-AP-0000101-2018

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 15, 2018**

M.D.E. (Mother) appeals from the decree entered February 28, 2018, in the Court of Common Pleas of Philadelphia County, which granted the petition of the Philadelphia Department of Human Services (DHS) and involuntarily terminated her parental rights to her minor daughter, J.S.A. (Child), born April 2016, pursuant to Section 2511(a)(1), (2), (5), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511.[1]  After careful review, we affirm.

We take the following facts from the trial court's May 11, 2018 opinion, which in turn is supported by the record.  DHS became involved with the family in January 2017 after receiving a report alleging that Mother was incorrectly

_____

[1] The parental rights of T.A. (Father) were terminated on the same day by separate decree.  He is not a party to this appeal and has not filed a separate appeal.

_____

*   Retired Senior Judge assigned to the Superior Court.

mixing Child's infant formula and that, as a result, Child was underweight. The report also alleged that Mother was diagnosed with mental health issues and exhibited aggressive behavior.[2]

In February 2017, DHS briefly made contact with Mother and Father. By the time contact was re-established on April 10, 2017, Child was still underweight, and an order for protective custody (OPC) was obtained. Child was placed in foster care that same day.

On April 19, 2017, the court convened a dependency hearing and adjudicated Child dependent. On November 22, 2017, following a permanency review hearing, the court found clear and convincing evidence established aggravated circumstances as to both Mother and Father, because they each previously had parental rights to other children terminated.

In December 2017, Mother and Father attended a single case plan (SCP) meeting. Mother's objectives were to: (1) participate in biweekly supervised visitation; (2) attend parenting classes; (3) participate in a parenting capacity evaluation; (4) attend Child's scheduled medical appointments; (5) attend a housing workshop; (6) comply with the court-ordered recommendations of the Clinical Evaluation Unit (CEU) drug and alcohol assessment. Mother did not go to CEU for an evaluation or random drug tests, did not complete a

_____

[2] The record does not provide further elaboration regarding Mother's mental health issues, whether Mother received appropriate treatment for her issues, or what constituted "aggressive behavior." DHS' statement of facts indicates that Mother denied having mental health issues. (**See** DHS Exhibit A).

parenting capacity evaluation, did not confirm her address, and did not attend parenting classes, housing classes, or financial counseling classes.

On February 5, 2018, DHS filed a petition seeking to involuntarily terminate Mother's parental rights and change Child's permanency goal to adoption. On February 28, 2018, the court held a hearing on the termination petition. Mother was represented by counsel and testified on her own behalf. Child was represented by James King, Esquire, as legal counsel and Lisa Port, Esquire, as guardian *ad litem*. DHS presented the testimony of Jessica Law, a social worker for NET Community Umbrella Agency (CUA), the case manager.

Ms. Law testified that Mother was not compliant with any of her objectives and was living in a boarding house that was inappropriate for a child. (*See* N.T. Hearing, 2/28/18, at 7-11). Mother had an intake at Achieving Reunification Center (ARC) but her case was closed in August 2017 for non-compliance. (*See id.* at 9-10). Following a second referral, Mother attended an intake in January 2018 and attended two out of three parenting classes, but no housing or financial counseling. (*See id.* at 10-11). As of November 2017, Mother attended only half of the weekly supervised visits; after the visitation schedule was changed to biweekly, Mother attended five of the seven visits. (*See id.* at 11-12). Additionally, Ms. Law testified that Child is parentally bonded with her pre-adoptive foster parents, and that they take care of her medical, emotional, and daily needs. (*See id.* at 12-13). Ms. Law believed it was in Child's best interests for Mother's rights to be terminated

and that Child would not suffer irreparable harm from the termination. (*See id.* at 14).

Mother testified that she believes she has a bond with Child. (*See id.* at 42). Further, Mother testified that she attempted to go to CEU for screening tests but was told to wait. (*See id.* at 41). Mother presented evidence that she was enrolled in a parenting class and had been attending classes since January 2018. (*See id.* at 27).

At the conclusion of the hearing, the court granted the petition pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b), and entered decrees terminating Mother's and Father's parental rights. This timely appeal followed.[3]

> Mother presents the following questions for our review:
>
> 1. Did the Department of Human Services (DHS) sustain its burden under [23] Pa.C.S.A. [§] 2511(a)(1)[,] (2) or (5) that Mother's parental rights should be terminated when there was evidence that Mother was actively completing her permanency goals?
>
> 2. Was there sufficient evidence presented to establish under 23 Pa.C.S.A. [§] 2511(b) that it was in the best interest of [Child] to terminate Mother's parental rights?
>
> 3. Was there sufficient evidence presented to establish under [23 Pa.C.S.A §] 2511(b) that Mother demonstrated a sincere and genuine desire to maintain a parent-child bond with [Child]?

(Mother's Brief at 4).

---

[3] Mother filed her concise statement of errors complained of on appeal contemporaneously with her notice of appeal on March 26, 2018. The trial court entered an opinion on May 11, 2018. *See* Pa.R.A.P. 1925(a)(2)(i)-(ii).

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Prior to addressing the merits of Mother's appeal, we must first determine whether she has preserved her issues for our review. Where an appellant does not preserve her issue by raising it in her concise statement of errors complained of on appeal, that issue is waived on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."); *Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006).

Here, Mother's Rule 1925(b) statement does not include the second and third issues she raises in the statement of the questions involved section of her brief, relating to Child's best interests and the parent-child bond. (*See* Rule 1925(b) Statement, 3/26/18, at 1-2; Mother's Brief, at 4). Accordingly,

Mother's second and third issues are waived. **See** Pa.R.A.P. 1925(b)(4)(vii);

**Krebs**, **supra** at 797. We now turn to the sole issue Mother has preserved.

Mother argues that the trial court erred and abused its discretion in terminating her parental rights pursuant to section 2511(a)(1), (2) and (5). (**See** Mother's Brief, at 11-12). Essentially, Mother argues that DHS did not prove by clear and convincing evidence that her rights should be terminated, and that she was making progress towards her objectives. (**See id.**). Mother avers that, given the statutory requirement of fifteen months to complete her goals, she would have been able to care for her daughter. (**See id.** at 13). This issue merits no relief.

Specifically, as noted above, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). To affirm, we need only agree with any one of the subsections of 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we focus our analysis on subsection (a)(2), which states:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \*  \*  \*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

- 6 -

abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998) (citation omitted). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *See In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *See id.* at 1117-18.

The relevant considerations set forth in the Juvenile Act regarding permanency planning are as follows:

> Pursuant to § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months.

*In Interest of L.T.*, 158 A.3d 1266, 1276-77 (Pa. Super. 2017) (citation and footnote omitted). With regard to the last consideration,

> [i]t is beyond cavil that the fifteen-to-twenty-month period outlined in § 6351 is not a prerequisite to a goal change, but rather, an aspirational target in which to attain permanency. *See* 42 Pa.C.S. § 6351(f.1)(9) ("If the child has been in placement for at least 15 of the last 22 months . . . [the court must determine] whether the county agency has filed or sought to join a petition to terminate parental rights[.]").

*Id.* at 1279.

> Here, the trial court observed that:
>
> The record demonstrated Mother's ongoing inability to provide care for or control of Child due to her failure to remedy the conditions that brought the Child into care. Specifically, Mother had not completed her SCP objectives and exhibited an inability or refusal to attend programs necessary to complete her SCP objectives or to follow court orders.

(Trial Court Opinion, 5/11/18, at 4).

The record reflects that Mother did not go to CEU for an evaluation; complete a parenting evaluation prior to the hearing; obtain appropriate housing or apprise DHS of her current address; attend housing or financial classes; or visit regularly with child. (*See* N.T. Hearing, at 7-12). While there was some testimony that Mother had begun visiting more regularly with Child and, as of February 2018, had attended two parenting classes, Mother was overwhelmingly non-compliant with her objectives. (*See* id. at 11-12). Accordingly, DHS proved by clear and convincing evidence that Mother's repeated and continued incapacity had caused Child to be without essential

parental care, control, or subsistence, and the causes of the incapacity could not be remedied.  **See Lilley**, **supra** at 330; **Z.P.**, **supra** at 1117.

Thus, we affirm the court's decree involuntarily terminating Mother's parental rights.

Decree affirmed.

President Judge Gantman joins the Memorandum.

Judge Ott concurs in the result.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/18